FILED

**December 10, 2021**
KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

F.M.D. HOLDINGS, LLC,

     Plaintiff,

v.

REGENT FINANCIAL CORPORATION
d/b/a REGENT FINANCIAL SERVICES
and d/b/a E.O. WOOD ROOFING, et al.,

     Defendants.

No. 5:20-CV-269-H

## MEMORANDUM OPINION AND ORDER
## ENTERING DEFAULT JUDGMENT AGAINST ALL DEFENDANTS

The first rule of litigating in federal court is that the parties and the Court must work together "to secure the just, speedy, and inexpensive determination of every action and proceeding." Federal Rule of Civil Procedure 1.

That has not happened here. F.M.D. Holdings, LLC sued Regent Financial Corporation, Steven C. Bradley, and Mark Bradley, alleging that they infringed FMD's intellectual property rights and committed various state torts in the process. FMD seeks an injunction, as well as any monetary damages, fees, and costs to which it may be entitled.

But determining whether FMD is entitled to what it seeks has been stymied by the defendants' refusal to either defend themselves or comply with this Court's orders. FMD moves once again for this Court to enter a default judgment against the defendants.

FMD has tolerated infringement of its rights long enough. The defendants have disrespected the Court long enough. The Court has attempted to accommodate the defendants long enough. For failing to contest the suit and for ignoring numerous orders, a default judgment—including an injunction and fees—will be entered against the defendants.

1.      **Factual and Procedural History**

The Court's prior orders (Dkt. Nos. 18, 26, 33, 37, 40, 41, 53) outline the tortured

history of these proceedings and the lengths to which the Court has gone to avoid entering a

default judgment in this case.

This saga began on November 11, 2020, when FMD Holdings, LLC filed suit

against Regent Financial Corporation, Steven C. Bradley, and Mark E. Bradley.  Dkt.

No. 1.  The complaint alleges that the defendants infringed FMD's trademarks and

copyrights.  *Id.* at 5–7.  FMD sought injunctive and monetary relief.  *Id.* at 12–14.

Eleven days later, the Clerk received executed summonses as to all three defendants.

Dkt. No. 9.  Steven Bradley then moved, pro se, for more time to respond to the complaint.

Dkt. No. 10.  The Court granted him—and only him—more time to file an answer.  Dkt.

No. 11.

Nevertheless, all three defendants filed answers on January 8.  Dkt. Nos. 15, 16, 17.

Problems abounded.  Dkt. No. 18.  All three answers were signed by the same filer—Steven

Bradley.  *See* Dkt. Nos. 15 at 2 (Answer of Mark E. Bradley); Dkt. No. 16 at 2 (Answer of

Steven C. Bradley); Dkt. No. 17 at 2 (Answer of Regent Financial Corp.).  But Steven

Bradley is not an attorney, so he can only represent himself.  Dkt. No. 18 at 2.  The answers

on behalf of Mark Bradley and Regent Financial were thus nullities.  *Id.*  Moreover, all three

answers were general denials, which are "available to a party acting in good faith only in the

most exceptional cases."  *Mary Kay, Inc. v. Dunlap*, No. 3:12-CV-0029-D, 2012 WL 2358082,

at *7 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (quoting 5 Charles A. Wright & Arthur R.

Miller, Federal Practice and Procedure § 1265, at 549 (3d ed. 2004) (hereinafter "Wright &

Miller"); Dkt. No. 18 at 2–3.  Accordingly, the Court struck all three answers and ordered the defendants to file new ones by February 5.  Dkt. No. 18 at 3.

When they failed to do so, FMD asked the Clerk to enter default judgment against the defendants, pursuant to Federal Rule of Civil Procedure 55.  Dkt. No. 19.  Obtaining a default judgment is a three-step process involving the defendant's default, the entry of default by the Clerk, and a default judgment.  *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  By their failure file timely answers to the complaint, the defendants satisfied the first step.  And, on February 25, the Clerk entered the defendants' default, thus completing the second step.  Dkt. No. 20.  FMD then asked the Court to enter default judgment—the third and final step.  Dkt. No. 21.

Claiming that they did not receive the Court's order striking their answers, the request for entry of default, or the Clerk's entry of default, Steven and Mark sought additional time to file a response to FMD's motion for default judgment and to "explore the possibility of hiring counsel."  *E.g.*, Dkt. No. 22 at 1.  Yet again, Steven signed on behalf of Regent Financial despite the fact that he is not an attorney.  The Court ordered the parties to "file appropriate responses curing all stated deficiencies on or before April 16, 2021 or face a possible default judgment."  Dkt. No. 26 at 2.  FMD, on the defendants' behalf, filed a consented motion to extend that deadline to May 17 (Dkt. No. 30), which the Court granted (Dkt. No. 31).  That deadline came and went without any further filings by the defendants.

On July 6, still lacking an answer, the Court issued an order directing the defendants to show cause by July 16 as to why default judgment should not be entered against them. Dkt. No. 33.  The Court explicitly noted that the failure to file a timely response would result in a default judgment being entered against them.  *Id.* at 3.

– 3 –

The defendants filed no response.  FMD informed the Court that the parties had conducted unsuccessful settlement negotiations, so the Court on July 23 ordered FMD to file either an amended motion for default judgment or a status report explaining how litigation would proceed.  Dkt. No. 34.  FMD chose the former and filed an amended motion for default judgment on August 6, adding the attorney's fees it had incurred since its first motion.  Dkt. No. 35; *compare* Dkt. No. 35-2 at 4 (proposed order for amended motion, seeking $43,395.75) *with* Dkt. No. 21-2 at 4 (proposed order for original motion, seeking $30,189.04 in fees).

On September 10, the Court scheduled a hearing on FMD's amended motion for default judgment for September 22.  Dkt. No. 37.  That order explained that the "Court ha[d] tentatively concluded that FMD [was] entitled to default judgment."  *Id.* at 1.  Then, on September 17, Steven Bradley reappeared and requested a continuance because he had COVID.  Dkt. No. 39.  Less than two hours later, the Court granted the motion and reset the hearing for October 26.  Dkt. No. 40.  Given Steven's reappearance, the Court invited any defendant to file a motion to set aside the clerk's entry of default by no later than October 8.  Dkt. No. 41 at 2.

On October 4, Mark and Steven—but not Regent Financial, which has yet to file anything in this case—filed identical general denials, motions to compel alternative dispute resolution, and motions to set aside the entry of default.  Dkt. Nos. 44–47. Steven and Mark also renewed their request that the Court abate this case pending mediation "as outlined in [the] Alternative Dispute Resolution Act" "[p]ursuant to Rule of Civil Procedure 49 CFR § 1109.3."  *E.g.*, Dkt. No. 45; *see also* Dkt. No. 15 (same).  That citation is nonsense because it relates only to disputes within the jurisdiction of the Surface Transportation Board, which

this is not.  As for the motion to set aside the Clerk's entry of default, the defendants

provided no argument or authority for why there was good cause to do so, as Rule 55

requires.  *See* Dkt. Nos. 45; 47.

FMD responded.  Dkt. No. 49.  The response notes that Regent has still not filed an

answer in this case; that the most recent answers filed by Steven and Mark suffer from the

same defects as the original answers; that the defendants offer nothing close to the "good

cause" required to set aside the clerk's entry of default; and that mediation is unnecessary

because the parties have previously tried to settle their dispute, were unsuccessful, and

nothing has changed that would lead to a different outcome.  *Id.* at 3–5.  FMD also noted

that the infringing website remains active, representing an ongoing harm to FMD's

reputation and rights.  *Id.* at 4.  The defendants were not granted a reply.

The Court proceeded in anticipation of holding the October 26 hearing on FMD's

default motion.  But on October 21, Mark Bradley requested a continuance, stating that now

he had COVID.  Dkt. No. 51.  The Court granted the continuance and reset the hearing for

December 2 before FMD had a chance to respond.  Dkt. No. 53.

Also on October 21, Steven filed a "Request for Court to Accept Denial of

Allegations and Enter into Mediation."  Dkt. No. 52.  The filing states that Steven "intends

'in good faith to deny all the allegations of a pleading.'"  *Id.* at 1 (citing to Fed. R. Civ. P.

8(b)(3), regarding general denials).  Steven also counters FMD's representation that the

parties have engaged in good faith settlement negotiations.  *Id.* at 1–3.  Steven notes that the

plaintiffs made an offer to settle the case for $40,000, but that he, Mark, and Regent are all,

in his words, "broke."  *Id.* at 1.  Steven added that the defendants would be willing to

shutter the offending website, sign over the domain name, and "pay the plaintiffs reasonable

legal expenses over an extended period time." *Id.* at 1–2.  Neither Mark nor Regent have confirmed the details of this account, nor have they confirmed that they would, in fact, be amenable to the terms Steven purportedly offered the plaintiff.  Steven goes on to say that plaintiff's counsel never responded and that "at no point in time can this be considered 'good faith' settlement discussions." *Id* at 2.

Despite the Court's order admonishing him not to (Dkt. No. 26 at 3), Steven again speaks for Regent:  He says that "Regent Financial is broke it has no money and cannot pay for council [sic]." *Id.* at 2.  Steven also asserts that the "Finance My Deductible" website— the one allegedly built with FMD's stolen code—is down.  *Id.*  He also argues that all FMD wants is to reduce competition:  "'Finance My Deductible' cannot be confused with 'Fund My Deductible.'" *Id.* at 2; *but see also id.* at 1 (noting that Steven intends to deny all the allegations of the complaint) *and* Dkt. No. 1 at 5 (alleging the existence of "Finance My Deductible").

Steven continues that he is barely paying his bills.  *Id.* at 2.  The Court should, in his view, "move this case to mediation or in the alternative ask the Plaintiffs [sic] attorney to accept the offer I made and that has been cited in this letter."  "Mediation is clearly an acceptable way to move this case out of the court and allow the parties to come to a reasonable settlement." *Id.* at 3.  Of course, the Court cannot direct FMD to accept a settlement.

FMD responded, incorporating by reference its prior arguments made in response to the defendants' motion to set aside default and request for mediation (Dkt. No. 49).  Dkt. No. 56.  Mark and Regent filed nothing.

The Court held a hearing on December 2 to determine whether to set aside the Clerk's entry of default, whether to enter default judgment against the defendants, and, if so, whether and to what extent FMD should be able to recover its attorney's fees.  Dkt. No. 58 (minute entry); *cf.* Dkt. No. 37 (order setting hearing).  This was done out of an abundance of caution, as FMD's Amended Motion for Default Judgment (Dkt. No. 35) provided affidavits and precise details as to the fees FMD's lawyers had charged.  Dkt. No. 35-1; *see generally* Fed. R. Civ. P. 55(b)(2); *see also* Dkt. No. 37 at 2 (explaining that the hearing was being held "so as to minimize the risks of relitigating" the default judgment).  FMD was represented by counsel at the hearing.  Dkt. No. 58.  None of the defendants appeared.  *Id.* At the hearing, the Court orally denied Steven and Mark's motions to set aside the Clerk's entry of default (Dkt. Nos. 45 & 47), granted FMD's amended motion for default judgment (Dkt. No. 35), and concluded that the $43,395.75 in attorney's fees sought by FMD were reasonable.  This opinion explains those rulings in greater detail.

## 2.    Governing Law

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default has been entered, the Court may, upon a motion by the plaintiff, enter a default judgment against the defaulting defendant.  Fed. R. Civ. P. 55(b)(2).  "[T]he entry of default judgment is committed to the discretion of the district judge."  *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)

"Default judgments are a drastic remedy, not favored by the Federal Rules."  *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citing Wright & Miller § 2681).  Only when "the adversary process has been halted because of an

essentially unresponsive party" should default judgment be entered. *Id*. And the Fifth

Circuit has a strong "policy in favor of resolving cases on their merits and against the use of

default judgments." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 594

(5th Cir. 2014). Accordingly, "[a] 'party is not entitled to a default judgment as a matter of

right, even where a defendant is technically in default.'" *Settlement Funding, LLC v.*

*TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009); *accord Nat'l Cas. Co. v.*

*KT2 LLC*, No. 3:19-CV-1926-E, 2021 WL 1338221, at *2 (N.D. Tex. Apr. 8, 2021) (Brown,

J.) (same).

     "When the defaulting party is a pro se defendant, the Court must be especially

hesitant to enter a default judgment." *Interscope Records v. Benavides*, 241 F.R.D. 458, 461

(W.D. Tex. 2006). In part, this is because one factor that a district court should consider

when determining whether to grant a default judgment is the likelihood that any such

judgment will be set aside pursuant to Rule 55(c). *Lindsey v. Prive Corp.*, 161 F.3d 886, 893

(5th Cir. 1998). So, "as a general rule[,] a district court should grant a default judgment

sparingly and grant leave to set aside the entry of default freely when the defaulting party is

appearing *pro se.*" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

     But it has never been "suggested that procedural rules in ordinary civil litigation

should be interpreted so as to excuse mistakes by those who proceed without counsel."

*McNeil v. United States*, 508 U.S. 106, 113 (1993). Moreover, it "is a well-settled principle

that a district court may enter default judgment pursuant to Rule 55 for failure of a party to

comply with court rules of procedure." *Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018)

(internal quotation marks and citation omitted). Put another way: "Entry of a default

judgment is an appropriate sanction when the disobedient party has failed to comply with a

court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the Court's order." *Tech. Chem. Co. v. IG-LO Prod. Corp.*, 812 F.2d 222, 224 (5th Cir. 1987) (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)).

A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993).

**3.   A default judgment is warranted because the defendants failed to contest the case or comply with the Court's orders.**

To determine whether to enter default judgment, the Court asks (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice to the nondefaulting party; (3) whether the grounds for default are clearly established; (4) whether the default was caused by either a good-faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default judgment upon a post-judgment motion from the defendant. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing 10 Charles Alan Wright et al., Federal Practice and Procedure § 2685 (2d ed. 1983)). Any doubts about whether to enter default judgment are resolved in favor of the defaulted party. *Lacey v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (citing *Gen. Tel. Corp. v. Gen. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). As explained below, all six *Lindsey* factors weigh in favor of entering default judgment.

### A.      Default judgment is procedurally warranted.

Factors 1, 2, 3, and 5 all weigh in favor of default judgment.[1]

#### i.      There are no material issues of fact in dispute.

The first *Lindsey* factor asks whether there are material issues of fact at issue in the case.  161 F.3d at 893.  When a default has been entered, the factual allegations of the complaint are taken as true.  *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981) and *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). No answer has been filed.  Consequently, there are no material issues of fact in dispute.[2]

#### ii.      The defendants have ground the adversary process to a halt.

The second *Lindsey* factor asks whether there has been substantial prejudice to the plaintiff from the defendant's default.  161 F.3d at 893.  Here, the lengthy delay occasioned by the defendants' default counsels in favor of entering a default judgment.  *See Carmel Cap., LLC v. Nu Home Source Realty LLC*, No. 4:19-CV-0315-O (N.D. Tex. Dec. 17, 2019) (O'Connor, J.); *United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988 at *2 (N.D. Tex. Feb 6, 2009) (O'Connor, J.).

While the Court would prefer to resolve FMD's allegations on the merits, whether through intransigence or incompetence, the defendants have ground this case to a halt.  The Court has issued explicit warnings about the consequences that would flow from the defendants' continued noncompliance with Court orders or basic litigation procedures.  *E.g.*,

---

[1] Factors 4 and 6 are jointly addressed below.

[2] A more exhaustive review of the complaint's allegations and their legal sufficiency is undertaken in Part 4 of this Opinion.  But, as a preview:  "[t]he Court has no difficulty concluding that FMD states a plausible basis for the relief it seeks."

Dkt. No. 18 at 3 ("Any failure to file an appropriate answer or other response by the deadline fixed above could result in entry of default or default judgment against that defendant for the relief sought against that defendant by the plaintiffs in this action.").  And yet there is still no valid answer from any of the defendants.  When a defendant's conduct impedes the adversary process—and for the past year the defendants have done little else—a default judgment is appropriate.  *Sun Bank of Ocala*, 874 F.3d at 276.  The second *Lindsey* factor is thus amply satisfied.

And although it does not affect the Court's conclusions, the defendants' antics have made litigating this case needlessly complicated and difficult.  Steven argues that FMD is nitpicking when it points out (Dkt. No. 49 at 2 & n.3) that he has not complied with the local rules regarding the contents of the signature block on his filings.  Dkt. No. 52 at 2–3.  Those rules require information like a mailing address, email address, and phone number.  What may seem trivial to him is no small matter to the plaintiffs or the Court, however.  It is neither FMD's nor the Court's job to track down the defendants every time an order or motion is filed.  That responsibility rests with the defendants, just as it rests with every other party in every other case.  Both FMD and the Court went to great lengths to serve filings on the defendants despite their noncompliance with litigation basics.  But in many instances, those efforts were insufficient: the docket currently indicates that at least eight filings were returned as undeliverable despite being sent to the addresses the defendants provided.  The defendants have previously invoked the excuse of "I did not receive timely notice" despite their failures to maintain a current address for service.  *See* Dkt. No. 22 at 1.  The Court will not allow its docket to become a venue for games of cat and mouse.

### iii. The basis for entering default judgment is clear: the defendants have failed both to defend themselves and to comply with this Court's orders.

The third factor asks whether the grounds for default are clearly established.  They are.

### a. Regent Financial Corporation

Differentiating corporate persons from corporeal persons is generally unnecessary.  *See* 1 U.S.C. § 1.  But here the Court has good reason to address Regent separately from the Bradleys: at least the Bradleys appeared in this suit.

In federal court, a corporation is not permitted to proceed pro se.  *Donovan v. Rd. Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) ("The 'clear' rule is 'that a corporation as a fictional legal person can only be represented by licensed counsel.'") (quoting *In re K.M.A.*, 652 F.2d 398, 399 (5th Cir. 1982)).  "This is so even when the person seeking to represent the corporation is its president and major stockholder."  *In re K.M.A.*, 652 F.2d 398, 399 (5th Cir. 1982) (citation omitted).

"[T]he appropriate measure for a judge to take when confronted with an unrepresented corporation is inherently discretionary."  *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004).  The Court could "admonish the corporation that it cannot proceed without counsel, order the corporation to retain counsel within a certain period of time (the appropriate amount of time also being within the judge's discretion), or dismiss the case."  *Id.* at 873, n.5.  Indeed, when a corporation declines to hire counsel to represent it, the court may properly dismiss its claims, if it is a plaintiff, or strike its defenses, if it is a defendant.  *See Donovan*, 736 F.2d at 1005 (holding that district court properly struck the defenses of a corporate defendant that refused to hire counsel).

Some courts have found default judgment to be the appropriate remedy when a corporation fails, after a court warning, to retain counsel. *See, e.g., PalWeb Corp., Inc. v. Vimonta AG*, No. 3:00-CV-1388-P, 2003 WL 21992488, at *1 (N.D. Tex. Aug. 19, 2003) (Solis, J.) (finding a defendant in default and entering a final judgment against it after the court ordered the corporation to obtain substitute counsel on two occasions, but no attorney licensed to practice in the jurisdiction entered an appearance on the defendant-corporation's behalf); *Doe v. Compact Info. Sys., Inc.,* No. 3:13-CV-5013-M-BH, 2017 WL 3394584, at *1 (N.D. Tex. July 14, 2017) (Ramirez, M.J.) *report & recommendation adopted by* 2017 WL 3405522 (Lynn, C.J.); *see also Mount Vernon Fire Ins. Co. v. Obodoechina*, 2009 WL 424326, at *1 (S.D. Tex. Feb. 19, 2009) (Rosenthal, J.) ("When a business is without counsel, it is appropriate to instruct the business that it must retain counsel. If, after sufficient time to obtain counsel, there is no appearance by counsel, judgment may be entered against the business entity by default.").

This Court joins them. Regent Financial Corporation was warned multiple times to obtain counsel. Dkt. No. 18 at 3 ("The Court directs Regent to retain local counsel."); Dkt. No. 26 at 2 ("Once again, the Court instructs Regent to retain counsel to represent it in this action. . . . If Regent fails to obtain counsel as instructed by the Court, plaintiff is permitted to seek a default judgment against Regent."); Dkt. No. 33 at 2 ("The Court ordered Regent to retain counsel and for each defendant to file a proper answer no later than February 5, 2021. The defendants failed to comply with this order."); Dkt. No. 41 at 2 ("Regent Financial Corporation is a legal figment that cannot represent itself; counsel must represent its interests in this litigation."). It has failed to do so. Steven Bradley, who attempted to speak for Regent, was warned similarly to no avail. *See, e.g.*, Dkt. Nos. 26 at 2 ("Steven

– 13 –

Bradley is prohibited from filing any further documents on behalf of Mark Bradley or Regent."); 41 at 2 ("The Court reminds the defendants that Steven C. Bradley is not an attorney and therefore may not represent Mark Bradley or Regent Financial Corporation in these proceedings.").  Steven has alleged that Regent has no assets, so it cannot afford counsel.  Dkt. No. 52 at 2.

The only reasonable inference the Court can draw from these facts is that Regent will not retain counsel so that it may appear and defend itself.  The Court warned the defendants in July that failure to comply with the Court's orders would result in a default judgment against them.  Dkt. No. 41 at 2.  Still without an answer from FMD and with one unlikely to ever come, FMD is clearly entitled to entry of default judgment against Regent Financial Corporation.

### b.    Steven and Mark

As a preliminary matter, the Steven and Mark have been served with summons. Dkt. No. 9.  They have had a default entered against them by the clerk.  Dkt. No. 20.  They are not in military service or otherwise subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 3931.  Dkt No. 19-1 at 2.  Nor are they minors.  Dkt. No. 19-1 at 2.  And they have had notice of FMD's amended motion for default for nearly three months.  S*ee* Dkt. No. 39 (Steven's September 17 motion to continue the default hearing)).

Both Steven and Mark's failure to answer the complaint and their refusal to comply with the Court's orders are alternative and independent bases for a default judgment against them.

### 1.   The general denials entered by the defendants are impermissible.

Steven and Mark Bradley have each filed two answers, nearly identical to one another, but all four fundamentally flawed because the Federal Rules prohibit general denials in all but the most exceptional of cases. *See* Wright & Miller § 1265; Fed. R. Civ. P. 8(b)(3)

The Fifth Circuit has "recognized that those unskilled in the law should not be held to strict standards of pleading.  Hence, courts have developed the practice of liberally construing pro se petitions and pleadings." *Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978).  While "[a] *pro se* litigant gets a liberal reading of his pleadings, . . . the basic procedural obligations still apply." *Propes v. Quarterman*, 573 F.3d 225, 231 (5th Cir. 2009) (citing *United States v. Petty*, 530 F.3d 361, 365–66 (5th Cir. 2008)).  Indeed, "*pro se* litigants must conform to the same rules that are no doubt more easily understood by lawyers." *Id.* at 232.

The defendants insist that they deny each and every allegation in the complaint. *E.g.*, Dkt. No. 16 at 1.  Yet with the same breath, they seem to concede the existence of "Finance My Deductible" and their control over the allegedly infringing website.  E.g., *id.* ("The name 'Finance My Deductible' does not in any way infringe on the Trademark name 'Fund My Deductible' or FMD.  It is distinctly different.").  Assuming that they intend to enter a general denial, the defendants' boilerplate assertion that they deny each and every claim is woefully insufficient under the Federal Rules, even for a pro se litigant.

Consider *Ocwen Loan Servicing, LLC v. Heiberg*, from the Eastern District of Texas. No. 4:17-CV-690, 2020 WL 957640, at *1 (Feb. 4, 2020).  There, the pro se defendant filed a response to a motion for default judgment that, for the first time, outlined the grounds on

which the defendant opposed the plaintiff's suit. *Id.* The clerk's office construed that motion as an answer and denied the plaintiff's request to enter default. *Id.* at \*1–2. The plaintiff then moved for reconsideration. *Id.* at \*2. Magistrate Judge Nowak quoted at length from the defendant's response in her recommendation that the plaintiff's motion be denied. *Id.* at \*4. That response included more than two hundred pages of exhibits supporting the defendant's version of events, which, taken together, indicated that defendant intended to generally deny all of the plaintiff's allegations. *Id.* at \*2, \*4.

Here, by contrast, the sum total of the defendants' representations is that they "deny all allegations." *E.g.*, Dkt. No. 46 at 1; *see also* Dkt. No. 16 at 1 (same) (original answer). No exhibits or attachments accompany that boilerplate assertion of nonliability. And saying that the general denial is made in good faith does not make it so, *contra* Dkt No. 52 at 1 ("Defendant hereby intends 'in good faith to deny all the allegations of a pleading.'"). As the Court explained nearly a year ago, "'an answer consisting of a general denial will be available to a party acting in good faith only in the most exceptional cases.'" Dkt. No. 18 at 2–3 (quoting *Mary Kay, Inc. v. Dunlap*, No. 3:12-CV-0029-D, 2012 WL 2358082, at \*7 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (quoting Wright & Miller § 1265)). Given that, for example, the defendants returned executed summonses from the same addresses listed in the complaint—*compare e.g.*, Dkt. No. 1 at ¶ 4 (listing Mark Bradley's address as 6704 Greenacres Drive) *with* Dkt. No. 9 at 2 (proof of service at "6704 Green Acres")—this is not an "exceptional case" where a general denial will suffice.

The defendants' own statements betray their assertion of good faith: Either the defendants deny all the allegations in the complaint, or they admit some of them—like the existence of Finance My Deductible. *Compare* Dkt. No. 1 at 20 (complaint alleging that the

defendants operate "financemydeductible.com") *and* Dkt. No. 46 at 1 (Steven Bradley denying all factual allegations) *with* Dkt. No. 51 at 2 (Steven Bradley conceding the existence of "Finance My Deductible").  Just as the defendants cannot contest the jurisdictional allegations in the complaint in good faith, the defendants cannot contest the allegations that "Finance My Deductible" exists given that they concede its existence.  Nor can the defendants rely on Rule 8(d)'s endorsement of pleading in the alternative because there is no legitimate doubt about the factual basis for the plaintiff's claims of jurisdiction. *Mary Kay*, 2012 WL 235808, at *8; *see* Wright & Miller, § 1285, at 741.  Both because they cannot deny all of the allegations—such as jurisdiction or the copyright-registration allegations (*see* Dkt. No. 1 ¶¶ 12–13)—in good faith and because they concede certain allegations but persist in a general denial, the defendants' answers are required to satisfy Rule 8(b)'s standard.  *See Poole v. Dhiru Hospitality, LLC*, No. SA-18-CV-636-XR, 2018 WL 7297891, at *2 ("Defendant's answer cannot be classified as a general denial as defined by Rule 8 because Defendant admitted to both jurisdiction and venue in the response to the motion to strike.  Thus, the answer must meet the requirements of Rule 8(b).").  Like the first, the second set of answers failed to meet that standard.

In sum, the defendants' filed the same answer that was stricken once before.  Their second answers (Dkt. Nos. 44 & 46) are impermissible general denials and are stricken accordingly.  *See* Dkt. No. 18; Fed. R. Civ. P. 12(f)(1).  The Court "is not required to allow a pro se litigant to cure defects ad infinitum." *United States v. Hassell*, 82 F. App'x 372, 375 (5th Cir. 2003) (noting that, although the defendants "had already been given an opportunity to cure the defects and file an answer that complied with the federal rules," "[t]hey did not do so").  Here, the defendants were granted multiple extensions in the hopes

– 17 –

that compliant answers would be filed.  They wasted those opportunities; they will not be provided another.

### 2.  The defendants have refused to comply with the Court's orders.

It is a well-settled principle that a defendant's failure to comply with the Court's orders is a sufficient basis for entering a default judgment.  *Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018) (ultimately citing *McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) ("There is ample authority to uphold a district court's power to order entry of a default for failure to comply with court orders or rules of procedure.")).  And "[a]lthough this [C]ourt prefers that claims be adjudicated on their merits, dismissal is appropriate when a *pro se* litigant has engaged in a clear pattern of delay."  *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  Indeed, when a party's delay is the result not of "of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware," *id.*, a default judgment is well-supported.  *See Tech. Chem. Co. v. IG-LO Prods. Corp.,* 812 F.2d 222, 224 (5th Cir. 1987) (affirming the entry of default judgment against a pro se defendant because it "is an appropriate sanction when the disobedient party has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order"); *see also infra* at 3.B.i (concluding that the defendants' default was willful).

The defendants' have failed to comply with no fewer than three orders of this Court directing that they file a responsive pleading.  *See* Dkt. Nos. 18, 26, 33.  Their deadlines have been extended four times.  Dkt. Nos. 10, 18, 26, 31.  They have failed to furnish valid addresses for service throughout this litigation, in contravention of federal rules.  *See* Fed. R.

Civ. P. 11(a); Local Civil Rule 5.1.  All of this reflects a total lack of respect for the Court and an unwillingness to comply.

Perhaps the best encapsulation of the defendants' antics can be found in the circumstances leading up to the hearing on FMD's amended motion for default judgment. On September 10, the Court scheduled the hearing for September 22, indicating that it had tentatively concluded that FMD was entitled to a default judgment.  Dkt. No. 37 at 1.  This was not the first time that the Court had previewed that possibility.  *See* Dkt. Nos. 26, 33. The Court held the hearing despite it being unnecessary:  FMD's motion attached a detailed, line-by-line accounting of the fees it incurred in litigating this case, so there was a sum certain at stake.  *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) ("The attorney fees at issue, however, were not unliquidated damages.  Instead, the record shows that detailed billing records substantiated the district court's award. . . . [W]here the evidence before the court allows it to make findings based upon that evidence, the court need not jump through the hoop of an evidentiary hearing.") (citing Fed. R. Civ. P. 55(b)).  Nevertheless, the Court went ahead with the hearing so as to minimize the risk of relitigating the motion's merits and "because it [was] in the interests of justice to do so."  Dkt. No. 37 at 2.  Five days before the hearing, Steven Bradley reappeared—having filed nothing for four months—and sought a 30-day continuance based on a COVID diagnosis (Dkt. No. 39), which the Court immediately granted (Dkt. No. 40).  Then, five days before the rescheduled hearing, Mark Bradley filed a motion for another 30-day continuance based on a COVID diagnosis (Dkt. No. 51), which the Court immediately granted (Dkt. No. 53).  When the hearing finally happened, the defendants were nowhere to be found.  Dkt. No 58.  If they were not going to show up, they should not have sought either extension.  *See* Fed. R. Civ. P. 11(b)(1).

Seventy-one days passed between the original hearing date and the actual hearing date. Nothing was gained.

Accordingly, even if the Court were incorrect about whether the defendant's general denials were permissible—and, as explained above, it is not—the defendants dogged refusal to comply with the Court's orders is an independent basis upon which the Court can enter default judgment.

*          *          *

The third *Lindsey* factor asks whether the grounds for default are clearly established. Here, there are two, each of which is amply supported, and each of which demonstrates the appropriateness of a default judgment in this case notwithstanding the defendants' pro se status.

> ### iv. The default judgment is not unduly harsh because it awards no damages beyond those expenses FMD has incurred in bringing this suit.

The fifth *Lindsey* factor asks whether the default will be unduly harsh. *Lindsey*, 161 F.3d at 893. The default judgment the Court will enter is not particularly harsh: it compels the defendants to stop doing something they have no right to do and orders them to pay FMD for the costs it has incurred in obtaining that injunctive relief. The defendants are not being ordered to pay exemplary or punitive damages; they are not even being ordered to pay damages stemming from their infringement upon FMD's marks—FMD may be underrecovering in this case.[3] To be sure, the fees that FMD will be entitled to recover may be substantial to someone who is "broke," but they are much smaller than they would be if

---

[3] Indeed, on the basis of Steven's representations, there seems to be little daylight between the effect of a default judgment and the settlement counteroffer he extended. *See* Dkt. No. 52 at 1–2.

FMD were to prevail after a full trial on the merits.  *See Scott v. Carpazano*, 556 F. App'x 288, 298 (5th Cir. 2014) (reversing a default judgment against one defendant because "it is almost certain that the outcome after a full trial would not be" a judgment as large as the default judgment entered).

Congress created an exception to the default rule regarding attorney's fees when it enacted the intellectual property rules under which FMD brings suit.  17 U.S.C. § 505; *see* 4 Nimmer on Copyright § 14.10 (2021).  Even if Congress had not adopted a fee-shifting provision in the Copyright Act, an award of fees would be appropriate here.  The American Rule—that each side pays its own attorney's fees—depends on each side contributing to the resolution of the case.  If one takes seriously the notion that the adversarial system upon which the American judicial system is predicated reaches the correct outcome by clashing towards clarity, parties must be incentivized to bear the costs of that fight.  Incorrect outcomes will proliferate if parties fail to put on their best—or in this case, any—defense. And while the costs of the fight may be high for many litigants, settlement is a perpetually available option to parties seeking to avoid further costs.  Allowing a defendant to skirt its obligations to contest a lawsuit not only wastes the plaintiff's resources and the Court's time, but undermines confidence in the outcomes of the judicial process, too.

The Fifth Circuit's policy of avoiding victories by default therefore weighs in favor of placing the full costs of default judgments—that is, the costs to the plaintiffs of the lopsided fight *and* the systemic costs of a potentially incorrect outcome—on the party best able to avoid that scenario—the defendant.  The best way to deter default judgments is to ensure that they do not pay.  The Court would strain to conclude that any default judgment that stops and prevents future violations of intellectual property rights and awards a plaintiff the

fees incurred in enforcing those rights would be unduly harsh, and it certainly cannot do so here given the relatively small sum FMD will be awarded and the amount of time that the defendants have had to contest the suit. *See Branch Banking & Trust Co. v. Re Rez L.P.*, No. 4:19-CV-630-RWS-KPJ, 2021 WL 863766, at \*5 (E.D. Tex. Jan. 8, 2021) (collecting authorities), *report & recommendation adopted by* 2021 WL 857937 (Mar. 5, 2021).

### B.   There is no good cause to refrain from entering a default judgment.

Evaluating the fourth and sixth *Lindsey* factors—whether the default was caused by a good faith mistake or excusable neglect and whether the Court would feel obligated to set aside the default judgment upon a motion from the defendant, respectively—requires a detailed examination of Federal Rules of Civil Procedure 55 and 60 and the interplay between the two.

A defendant can ask the Court to set aside either the Clerk's entry of default or the Court's entry of default judgment.  But the standards governing each request differ:  While the Court can set aside the Clerk's entry of default for "good cause," it can only set aside the entry of a default judgment in accordance with the provisions of Rule 60(b).  Fed. R. Civ. P. 55(c).  Those provisions require different showings depending on which clause of Rule 60(b) the defendant invokes but, as a general rule, "relief under Rule 60(b) is considered an extraordinary remedy," *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998), "not intended to relieve [a party] of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *Fed.'s Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977); *see also In re Pettle*, 410 F.3d 189, 193 (5th Cir. 2005) ("Where a party makes a considered choice . . . he 'cannot be relieved of such a choice [under Rule 60(b)] because hindsight seems to indicate to him' that, as it turns out his decision was

– 22 –

'probably wrong.'" (alteration in original) (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir. 2001))).  The standard for setting aside the entry of default is therefore more forgiving than that for setting aside the ultimate entry of a default judgment.  *See generally* Wright & Miller § 2692.

Here, the defendants moved to set aside the Clerk's entry of default against them.  Dkt. Nos. 45 & 47.  After considering whether there is good cause to do so—an inquiry that necessarily entails determining whether the default judgment would be the product of "mistake, inadvertence, surprise, or excusable neglect"—the Court concludes that their request should be denied and that the entry of default judgment is appropriate.  Thus, the fourth and sixth *Lindsey* factors are satisfied.

### i.   The defendants give no cause—let alone good cause—for setting aside the Clerk's entry of default.

The burden of showing good cause to set aside the entry of default lies with the party challenging it.  *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992); *Sindhi*, 905 F.3d at 331–32.  In determining whether good cause exists to set aside an entry of default, the court considers "(1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).  These factors are not exclusive, and factors such as whether the defendant acted expeditiously to correct the default may be considered.  *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014).  A district court need not weigh all possible factors; "the imperative is that [the factors] be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'"  *In re Dierschke*, 975 F.2d 181, 183 (5th Cir.

1992).  But, if the Court finds that the default was willful or that the defendant failed to present a meritorious defense, no further analysis is needed.  *Chinese Drywall*, 742 F.3d at 594 (willful default); *see also Cooper v. Faith Shipping*, Civ. A. No. 06–892, 2010 WL 2360668, at *12 n.104 (E.D. La. June 9, 2010) (same); *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 120 (5th Cir. 2008) (lack of a meritorious defense).

Regent did not move to set aside the Clerk's entry of default against it, so the Court will not do so.

Steven and Mark did, however.  Dkt. Nos. 45 at 1; 47 at 1.  But their request offers no reason for the Court to set aside the Clerk's entry of default against them.  Dkt. Nos. 45 at 1 ("[D]efendant requests the court to set aside Default Judgment and refer case to ADR Alternative Dispute Resolution."); 47 at 1 (same).  Their failure to provide any cause is sufficient to preclude a finding of good cause.  *Sindhi*, 905 F.3d at 332 (affirming entry of default because the defendant's request to vacate the Clerk's entry of default "did not offer any reasons why good cause exist[ed]" to do so).  Moreover, that request came in October, some eight months after the Clerk entered default, so it is hardly timely.  *See id.* ("[O]n October 24, the district court warned Raina that failure to comply with the earlier orders would result in an entry of default.  Even with these warnings, Raina did not comply with the district court's orders.  In fact, Raina did not respond at all until nearly six months later.").  When their request did come, it came only after the Court explicitly invited the defendants to move to set aside the Clerk's entry of default.  The Court does not hold their accepting the Court's invitation against them, but their failure to articulate any reason for setting aside the default after the delay and the invitation demonstrates yet again the defendants' unwillingness to make a serious effort at litigating this case.  *Cf. United States v.*

*Upton*, 91 F.3d 677, 684 n.10 (5th Cir. 1996) ("[C]laims made without citation to authority or references to the record are considered abandoned on appeal."); *L & A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994) (waiver for failing to cite authority). Because no cause is given for setting aside the Clerk's entry of default, there can be no "good cause" for doing so, as Rule 55(c) requires. Accordingly, Steven and Mark's motions to set aside the entry of default against them are denied.

The Court also, and alternatively, denies those motions because the defendants' default was willful. "A *willful default* is an 'intentional failure' to respond to litigation." *In re OCA, Inc.,* 551 F.3d 359, 370 n.32 (5th Cir. 2008) (emphasis in original) (quoting *Lacy,* 227 F.3d at 292). A defendant "who willfully disregards deadlines and court orders faces a difficult, if not impossible, task in proving good cause for the default existed." *Jones v. Phipps*, 39 F.3d 158, 163–65 (7th Cir. 1994).

Start with Regent, which itself has made no start. Regent returned an executed summons in this case (Dkt. No. 9), but it filed nothing else. Steven Bradley attempted to speak for it but, as recounted above, those attempts were futile. FMD's counsel explained at the hearing that Regent's registered agent for service in South Dakota is located in a remote location where the only process server is Regent's agent for service. And because it would be odd to serve oneself with legal papers, the process server indicated to FMD that it would not serve filings on Regent due to the conflict it presented. That problem is of Regent's creation, just like its failure to retain counsel. Having elected to completely ignore litigation of which it was aware, Regent's default is willful.

Now Mark and Steven, who were both served with notice of the complaint. Dkt. No. 9. They attempted to answer the complaint (Dkt. Nos. 15, 16), but those answers were

impermissible general denials, and Mark's was invalid because it was filed by a nonattorney on behalf of another party.  Dkt. No. 18.  The Court then granted leave to file answers that complied with the Rules.  *Id.*  Eight months later—and well beyond the date specified by the Court's order—the defendants filed revised answers *nearly identical* to those that had already been stricken.  To the extent there were any differences between the first and second answers, the latter were *even more general* than the former.  *Compare* Dkt. No. 15 at 1 (original answer stating "The name 'Finance My Deductible' does not in any way infringe on the Trademark name 'Fund My Deductible'" and "Defendants have no customers at this time") *with* Dkt. No. 44 (second answer omitting both statements and declaring that "Defendant denies all allegations").  The Court cannot plead the defendants' case for them, but it did give them guidance as to how to file a response to the complaint that was minimally compliant with the Federal Rules of Civil Procedure.

Rather than take the Court's guidance and use the four extensions granted to them, the defendants filed what they knew was unacceptable.  The Court even invited the defendants to move to set aside the Clerk's entry of default against them.  Dkt. No. 41 at 2.  As explained above, the defendants, for all intents and purposes, declined to do so.  The Court struggles to find any explanation for this behavior beyond a willful disregard for the Court's orders and the basics of litigating in federal court.  Because those choices were intentional, the defendants' default was willful.  *See OCA,* 551 F.3d at 370 n. 32.  And since "[a] finding of willful default ends the inquiry, . . . there need be no other finding."  *Chinese Drywall*, 742 F.3d at 594 (quoting *Lacy*, 227 F.3d at 292); *see Scott v. Carpanzano*, 556 F. App'x 288, 293–94 (5th Cir. 2014) (citing *Jenkens & Gilchrist*, 542 F.3d at 119) (same);

*Federated Nat'l Ins. Co., Inc. v. Loredo*, No. 3:17-CV-1712-S-BN, 2019 WL 5887399, at *13 (N.D. Tex. July 12, 2019) (Horan, M.J.) (same).

Nevertheless, the Court considers whether the defendants have presented a meritorious defense. They have not.

A district court has the discretion not to set aside the entry of default if the defendant fails to present a meritorious defense sufficient to support a finding on the merits in its favor. *Effjohn*, 346 F.3d at 563 (citing *Lacy,* 227 F.3d at 292). This generally requires that the defendant provide "definite factual allegations, as opposed to mere legal conclusions, in support of her defense." *Scott*, 556 F. App'x at 296 (noting that filing "only conclusory statements" would be insufficient) (citing *Jenkens & Gilchrist,* 542 F.3d at 122); *see United States v. One Parcel of Real Prop.,* 763 F.2d 181, 183–84 (5th Cir. 1985) (finding that a defendant "obtusely" presented a meritorious defense in a forfeiture action where the complaint did not contain any allegations that she obtained the subject property with illegal proceeds and she proved that she was the owner of the property). In determining whether a meritorious defense exists, the underlying concern is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *OCA*, 551 F.3d at 373 (citation and internal quotation marks omitted). Accordingly, a defendant "need not prove that it will likely succeed on the merits; rather, it need only establish that the evidence submitted, if proven at trial, would constitute a defense." *Fine v. Evergreen Aviation Ground Logistics Enter., Inc.*, No. 2:07-CV-165, 2009 WL 793753, at *3 (E.D. Tex. Mar. 20, 2009) (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993)). Such a standard "is intended only to ensure that the court's order vacating judgment will not be an exercise in futility." *Id.* at *3.

The defendants offered no "definite factual allegations" or evidence that would lend support to their general defenses or denials. *Jenkens & Gilchrist*, 542 F.3d at 122. The defendants assert that "Finance My Deductible" cannot be confused with "Fund My Deductible" (*e.g.*, Dkt. No. 46 at 1), but that is nothing more than a bald legal conclusion, *contra Scott*, 556 F. App'x at 296. Even if it were sufficient to constitute a meritorious defense, that defense would go only to the trademark claim—it in no way affects the copyright or common-law claims. And because the entire default judgment against the defendants could be supported by the copyright claims alone, the defendants have not raised the "possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *OCA*, 551 F.3d at 373 (internal quotation marks omitted).

Based on the paltry showing here, the defendants have not carried their burden to raise a meritorious defense. And just as with a willful default, the lack of a meritorious defense is a sufficient basis upon which to deny the motions to set aside the Clerk's entry of default.

In sum, Steven and Mark's motions to set aside the Clerk's entry of default (Dkt. Nos. 45, 47) are denied for three independently sufficient reasons: because they provide no cause, let alone good cause, to do so; because their default was willful; and because the defendants presented no meritorious defense.

> ii. **Setting aside a default judgment in this case would be an abuse of the Court's discretion.**

Having determined that it need not set aside the Clerk's entry of default, the Court now turns to the question of whether it would be compelled to set aside a default judgment against the defendants.

The Court may set aside a final default judgment under Rule 60(b).  Fed. R. Civ. P. 55(c); *Wooten v. McDonald Transit Assoc.*, 788 F.3d 490, 500–01 (5th Cir. 2015).  "[F]ederal courts should not be agnostic with respect to the entry of default judgments, which are generally disfavored in the law."  *Lacy,* 227 F.3d at 292 (citation and internal quotation marks omitted).  Although the Rule 60(b) standard is demanding, it should be "applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding."  *OCA,* 551 F.3d at 370.  Even the most liberal application of Rule 60(b) could not support setting aside a default judgment in this case.

### a.  The extraordinary relief Rule 60(b)(1) offers cannot be granted without good cause, which is wholly absent here.

The most common avenue to attack a default judgment after it is entered is Rule 60(b)(1)—that is, on the basis that the judgment resulted from "mistake, inadvertence, surprise, or excusable neglect."  To effectuate the policy in favor of merits resolutions, courts considering default judgments construe Rule 60(b)(1) liberally to ensure that they resolve doubtful cases on the merits. *Rogers v. Hartford Life and Acc. Ins. Co.,* 167 F.3d 933, 938 (5th Cir. 1999).  In determining whether good cause exists to set aside an entry of default, the Court "examine[s] the same factors" it considers when determining whether to set aside the Clerk's entry of default, *Effjohn*, 346 F.3d at 563 (citing *CJC Holdings*, 979 F.2d at 64):  "whether the default was willful, whether setting it aside would prejudice the adversary; and whether a meritorious defense is presented." *Jenkens & Gilchrist*, 542 F.3d 119; *Lacy,* 227 F.3d at 292; *accord* Fed. R. Civ. P. 55(c).  But these factors are not talismanic, and the Court can consider other factors relevant to the inquiry Rule 60(b)(1) requires, *Rogers*, 167 F.3d at 939, including whether "(1) the public interest was implicated, (2) there was a significant financial loss to the defendant, and (3) the defendant acted expeditiously to

correct the default." *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992).  The defendants bear the burden of proving by a preponderance of the evidence that their neglect was excusable rather than willful.  *Chinese Drywall*, 742 F.3d at 595.

"Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief."  *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993).  "In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court."  *Id.* (quoting *Knapp v. Dow Corning Corp.*, 941 F.2d 1336, 1338 (5th Cir. 1991)).

The Court has already concluded that the defendants' default was willful, *see supra* at B.i, so no other inquiry is necessary to conclude that the Court would not be justified in setting aside a default judgment in this case.  *Lacy*, 227 F.3d at 292 ("[a] finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" (quoting *Dierschke*, 975 F.2d at 184)).

The conclusion is the same for the defendants' failure to present a meritorious defense.  *See supra* at B.i.

And it would be the same if the Court were to rely solely on whether the defendants' neglect were "excusable."  The Supreme Court has adopted a "flexible understanding" of excusable neglect, *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 389 (1993), that encompasses "all relevant circumstances surrounding the party's omission," *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (quoting *Pioneer*, 507 U.S. at 395).  Factors include the reason for the default, whether it was within the movant's control, the danger of prejudice to the nonmovant, and the interests of efficient judicial

administration.  *See Pioneer*, 507 U.S. at 395; *see also Silvercreek Mgmt. v. Bank of Am. Secs. LLC*, 534 F.3d 469, 472 (5th Cir. 2008) (adopting *Pioneer* factors for excusable neglect).  But "inadvertence, ignorance of the rules, or mistakes construing the rules" are not ordinarily recognized as forms of excusable neglect, *Pioneer*, 507 U.S. at 391–92, and "negligent handling of a case, by itself, will not excuse untimely behavior or satisfy the showing required by Rule 60(b)."  *Casio Computer Co. v. Noren*, 35 F. App'x 247, 250 (7th Cir. 2002).

This is true even for litigants like the defendants, who appear pro se.  *Kaswatuka v. Dep't of Homeland Sec.*, 7 F.4th 327, 331 (5th Cir. 2021) (a "pro se party is in no way exempted from compliance with the relevant rules of procedure and substantive law"); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").  So while pro se litigants are entitled to a limited degree of procedural protections as provided by statutes and case law, their pro-se status does not preclude a default judgment when the defendant refuses to comply with Court orders.

Accordingly, the defendants' inability or refusal to read and follow the Federal Rules' plain language does not rise to the level of excusable neglect.  *See Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) (Posner, J.) ("An unaccountable lapse is not excusable neglect."); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir. 1985) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.").  Indeed, that standard is reserved for miscarriages of justice caused, for instance, by a judicial officer's misrepresentations, lost mail, or plausible misinterpretations of ambiguous rules.  *Prizevoits*,

76 F.3d at 134.  The Court encouraged the individual defendants to secure counsel and warned them that even pro se parties are required to comply with the Federal and Local Rules.  *E.g.*, Dkt. Nos. 18, 26.  Ignoring that advice cannot be inadvertent.  *See Fingerhut Corp. v. Ackra Direct Mktg. Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (affirming entry of default judgment where "judge specifically encouraged [defendants] to obtain substitute counsel, and warned them that failure to do so would not excuse them from complying with discovery obligations or relevant rules of procedure").

Moreover, the Court concludes that the defendants were not acting in good faith when they repeatedly ignored this Court's orders.  Though the defendants insist they acted in good faith, their actions speak louder than their words.  The defendants repeatedly asked the Court to refer the case to compel mediation or refer the case to alternative dispute resolution pursuant to federal regulations governing the Surface Transportation Board.  *E.g.*, Dkt. Nos. 15, 44, 52.  But the defendants were instructed by the Court to file a compliant answer—something they failed to do.  No matter how fervently the defendants believed that chapter 49 of the Code of Federal Regulations would allow them to avoid this Court's jurisdiction, or that the Court could order the plaintiffs to accept a settlement offer (Dkt. No. 52 at 2), a party cannot ignore a Court order in good faith.

Second, the defendants cannot rely on their pro se status as an excuse for their noncompliance.  Steven asserts that he cannot retain counsel.  Dkt. No. 52 at 1.  But the difficulty and expense of obtaining counsel generally does not render the defendant's refusal to comply with the Court's orders "excusable" or "good faith," especially when the defendants made little effort to explain their situation to the Court.  In March, Steven and Mark sought additional time to "explore the possibility of hiring counsel."  No defendant

indicated that they were "for all intensive [sic] purposes 'broke'" until October (Dkt. No. 52 at 1), seven months and several missed deadlines later.  All the while, the defendants ignored this Court's orders—but not without regularly citing authorities instructing that the Court should treat their filings liberally, because they are pro se.  *See, e.g.*, Dkt. No. 39 at 1. The defendants managed to find ample authority to cite to the Court about the Court's obligations to them, yet they spent little energy discharging their obligations to the Court.

The Court finds further support for its conclusions in cases dealing with parties' recalcitrance during the discovery process.  Where a district court awards default judgment as a discovery sanction, two criteria must be met.  *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) (discussing the criteria to be used when reviewing a district court's dismissal of a claim as a Rule 37 sanction).  First, the penalized party's discovery violation must be willful.  *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998); *Batson*, 765 F.2d at 514 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, (1976)); *Jones v. Louisiana State Bar Ass'n*, 602 F.2d 94, 96 (5th Cir. 1979).  Second, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect.  *Smith*, 145 F.3d at 344; *Batson*, 765 F.2d at 514 (citing *Marshall v. Segona*, 621 F.2d 763, 768 (5th Cir. 1980)).  When "the dilatory and obstructive conduct of the defendants has been well-documented" "the extreme sanction of default judgment" may be warranted.  *Smith*, 145 F.3d at 344.

For the reasons explained above, the Court has already concluded that the willfulness prong is satisfied.

And the second prong, far from undermining the case for default judgment, underscores its necessity here.  In a discovery dispute, the Court has a menu of options

ranging from adverse inferences to fees to sanctions to dismissal or default judgment.  *See* Fed. R. Civ. P. 37(b)–(f); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–89 (5th Cir. 2012).  Here, however, the defendants have refused to take the first step towards a defense.  Discovery cannot commence because FMD has no idea what to discover—the general answers filed in this case impede any progress towards narrowing the issues for trial in this case.

Of course the Court would have entered lesser sanctions if it could.  It already struck the defendants' answers once and it granted multiple extensions and opportunities for the defendants to avoid this result.  But there are few options other than a default judgment where a defendant has refused outright to file an answer that comports with the Federal Rules.  Or, in Regents case, do anything at all.

But even if the Court had lesser sanctions available to it, the Fifth Circuit has rejected the view that a court is "required to attempt to coax [parties] into compliance with its order by imposing incrementally increasing sanctions." *$49,000 Currency*, 330 F.3d at 379; *Moore v. CITGO Refin. & Chems. Co., L.P.*, 735 F.3d 309, 317 n.4 (5th Cir. 2013) (quoting *Emerick v. Fenick Indus., Inc.,* 539 F.2d 1379, 1381 (5th Cir. 1976) ("It is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction.")).  The Court granted extensions, provided guidance on how to cure deficiencies, and invited defendants to move to set aside the Clerk's entry of default.  Put another way:  the Court did try to coax the parties into compliance; it failed.  Nothing the defendants could do would restore the Court's confidence that they will make a diligent effort to contest this suit.

The Court thus has no difficulty in concluding that the default was not caused by a good-faith mistake or excusable neglect.  The Court's orders were exacting in laying out

– 34 –

what the needed to be done to avoid a default judgment.  *See, e.g.*, Dkt. No. 18 (quoting from Rule 8 and detailing the deadlines and steps required to file an appropriate answer).  They were ignored.  The Court's deadlines were extended time and time again to help avoid this outcome.  *See, e.g.*, Dkt. Nos. 11, 31, 40, 53.  They, too, were ignored.

Meanwhile, FMD has done nothing to impede the defendants' ability to contest this suit.  Indeed, FMD, through its counsel, has gone above and beyond in its attempts to ensure that the defendants were apprised of developments.  *See, e.g.*, Dkt. Nos. 37 at 2–3 (directing FMD's counsel to "provide defendants with notice of this order through whatever means counsel served notice of FMD's motion."); 41 at 2 ("The Clerk is ordered to transmit this order in hard copy to all defendants.  Likewise, the plaintiff is ordered to transmit this order to all defendants through whatever channels it has previously communicated with or served the defendants.  The Court will do the same."); *see also* Dkt. Nos. 42, 43, 48, 50, 54, 55, 57 ("Mail returned as undeliverable"); *cf. Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699 (7th Cir. 1995) ("[Plaintiff] was under no obligation, legal or ethical, to fill in any gaps caused by [defendant's] choice to proceed without the benefit of counsel.").

The defendants' conduct puts this case far afield from situations where delays might be described as "marginal" or "trivial," or where there is a one-off failure to comply with a procedural deadline.  This Court's standard scheduling order directs that trial should occur no more than eighteen months after the filing of a responsive pleading.  Here, more than one year after the complaint was filed, the defendants have still yet to file a responsive pleading.

The defendants have had multiple opportunities to avoid default judgment.  Dkt. Nos. 33 at 2; 37; 41.  With their final opportunity, Steven and Mark filed the same defective

pleadings that set the Court down this process back in January.  Dkt. Nos. 44, 46.  Deeming their conduct "good faith" or "excusable neglect" would not only deprive either term of all meaning, but deny FMD its rights to a speedy and fair resolution of its claims, as well. Relief under Rule 60(b)(1) is therefore inappropriate in this case.

> **b.      Other provisions of Rule 60(b) offer the defendants no help.**

Although Rule 60(b)(1) is the most common route to challenging a default judgment, there are other paths.

When "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" is uncovered, a court can set aside a final judgment under Rule 60(b)(2).  By its own terms, then, that subsection is inapplicable.  No evidence has been uncovered because the defendants have precluded discovery, so no evidence could be "new" as the rule uses that term.

Rule 60(b)(3) permits a district court to overturn a default judgment due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Given FMD's charity towards the defendants—even going so far as to file an agreed motion on their behalf, *see* Dkt. No. 30—the defendants almost certainly cannot provide "clear and convincing evidence" of fraud, misrepresentation, or misconduct. *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992).  Nor could they show that "the conduct complained of . . . [prevented them] from fully and fairly presenting [their] case." *Id.*  The only thing that has prevented the defendants from presenting their case is themselves.  Rule 60(b)(3) is therefore unavailable.

Rule 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void.  It applies only when a judgment is premised on a "jurisdictional error or on a

violation of due process that deprives a party of notice or the opportunity to be heard."
*United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 271 (2010).

Jurisdiction is proper because this case arises under the laws of the United States, *see* 28 U.S.C. § 1338(a), and the state-law claims that FMD brings arise from the same common nucleus of operative facts as the federal claims, *see* 28 U.S.C. §§ 1367(a), 1338(b), *and United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), so there can be no relief on jurisdictional grounds.

As for due process:  The defendants have previously accused the Court of failing to comply with the Federal Rules of Civil Procedure.  *E.g.*, Dkt. No. 22.  Specifically, they have alleged that the Court failed to properly serve documents upon them.  *Id.* at 1 ("As of today's date no response from the court was ever received by any defendant.  Therefore none of the defendants were given a chance to retain counsel.  The court failed to follow Federal Rules of Civil procedure Rule 5.  Serving and Filing Pleadings and Other Papers.") (all errors in original).  Putting aside the fact that Rule 5 governs how parties must serve documents—*see* Dkt. No. 26 at 2 n.1 (explaining the same)—the Court concludes that, even assuming that FMD or the Court failed to properly serve the defendants with documents, such failures do not amount to a deprivation of the defendant's constitutional due process rights sufficient to justify relief under Rule 60(b)(4).  *See Espinosa,* 559 U.S. at 272 ("[F]ailure to serve [a party] with a summons and complaint deprived [the party] of a right granted by a procedural rule. . . .  But this deprivation did not amount to a violation of [the party's] constitutional right to due process." (internal citation omitted)); *Callon Petroleum Co. v. Frontier Ins. Co.,* 351 F.3d 204, 210 (5th Cir. 2003) (noting that "[p]rocedural irregularities during the course of a civil case, even serious ones," do not amount to a due process

violation that would render a judgment void (citation and internal quotation marks omitted)).  Instead, the measure of due process is whether there was "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa,* 559 U.S. at 272 (citation and internal quotation marks omitted).  Given the efforts by the Court, the Clerk, and FMD to ensure that the defendants remained fully apprised of developments in this litigation, it is difficult to imagine what further reasonable steps could have been taken to keep the defendants informed.  And, of course, the defendants' filings reveal that, despite the countless unsuccessful attempt to serve them (*see* Dkt. Nos. 42, 43, 48, 50, 54, 55, 57), they did receive notice of the critical filings in this case and had ample opportunity to answer or contest the entry of default against them.  *E.g.*, Dkt. No. 39 (responding to the Court setting a hearing (Dkt. No. 37)).

Meanwhile, relief under Rule 60(b)(5) depends upon the existence of some prior judgment or the satisfaction of the demands presented by the complaint.  The defendants offer no evidence that they have previously settled with FMD or adjudicated the claims presented in its complaint.  Subsection (5) is therefore inapposite.

Finally, Rule 60(b)(6) offers no relief in situations such as this.  "Clause (6) is a residual or catch-all provision to cover unforeseen contingencies—a means to accomplish justice under exceptional circumstances." *Edward H. Bohlin Co.*, 6 F.3d at 357.  But "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made." *Id.* (quoting *United States v. O'Neil*, 709 F.2d 361, 373 n.12 (5th Cir. 1983) (quoting Wright & Miller § 2864)).  And numerous cases have held that relief under Rule 60(b)(6) is available only when sections (b)(1) to (b)(5) do

not apply.  *See, e.g.*, *Pioneer*, 507 U.S. at 393; *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988); *Gonzales v. Crosby*, 545 U.S. 524, 528–29 (2005); *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018) (describing Rule 60(b)(6) as "mutually exclusive" with the other provisions of Rule 60(b)).  Because the relief the defendants would seek falls squarely within the ambit of Rule 60(b)(1)–(b)(5), and because the default judgment is the result of their own choices in this litigation, the Court is precluded from considering whether Rule 60(b)(6) might afford any relief.

*        *        *

Any step other than the entry of default judgment here would make the threat of default judgment an empty one for future pro se litigants.  Defendants would have no incentive to diligently litigate cases against them if the Court were to countenance conduct like the defendants' here.  For good reasons, the legal system places many burdens on plaintiffs.  They are not, however, required to tolerate inexplicable and purposeless delays.  That is what the defendants' conduct amounts to.  Because all six of the *Lindsey* factors are satisfied, because there is no good cause to set aside the Clerk's entry of default, and because the Court finds no basis to support relief pursuant to Rule 60(b), a default judgment will be entered against the defendants.

### 4.    FMD's complaint supports the entry of default judgment.

After determining that default judgment is appropriate, the Court must assess the merits of a plaintiff's claims and find a sufficient basis in the pleadings for the judgment.  *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  "Through their failure to answer the complaint, the defendants admit the plaintiff's allegations of fact, and the facts are deemed admitted for the purposes of the judgment."  *Bank of New York*

*Mellon Tr. Co., N.A. v. Hancock*, No. 5:19-CV-270-H, 2020 WL 2989023, at *2 (N.D. Tex. June 4, 2020) (Hendrix, J.) (citing *Nishimatsu Constr.*, 515 F.2d at 1206). Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr.*, 515 F.2d at 1206. Nor are defendants held to admit a plaintiff's assertions of damages. Fed. R. Civ. P. 8(b)(6).

"[T]he requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss." *Edmond v. Marathon Petroleum Co.*, 2021 WL 619503, at *7 (W.D. Tex. Feb. 17, 2021) (citing *Nishimatsu Constr.*, 515 F.2d at 1206). Because Rule 12 must be affirmatively invoked by a defendant, the plaintiff's complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubted in fact)." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 & n.3 (5th Cir. 2015) (declining to import, part and parcel, the Rule 12 standard into the default-judgment context). It follows, then, that if a complaint could survive a 12(b)(6) motion, it has met the pleading standard for default judgment, as well. *See D'Arcy Petrol., LLC v. Mink*, No. 3:19-CV-2770-M-BT, 2021 WL 5218223, at *4 (N.D. Tex. Oct. 6, 2021) (Rutherford, M.J.) (collecting cases); *see also Functional Prods. Trading, S.A. v. JITC, LLC*, 2014 WL 3749213, at *16 (N.D. Ga. July 29, 2014) (same). The Court applies this stricter standard because the complaint meets it.

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of FMD's complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive a hypothetical motion to dismiss, FMD must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

When considering whether FMD's complaint states a claim for relief sufficient to survive the *Twiqbal* inquiry, the Court looks solely to the complaint and any attachments thereto—it does not look to any information adduced or presented in later filings or at the default hearing, thus avoiding the quandary identified in *Nishimatsu*.  *See* 512 F.2d at 1206 n.5 (reserving the "possibility that otherwise fatal defects in the pleadings might be corrected by proof taken by the court at a hearing" on the default judgment motion); *cf. Wooten v. McDonald Transit Associates, Inc.*, 775 F.3d 689, 698–703 (5th Cir. 2015) (withdrawn opinion) (explaining the quandary).  And on the basis of the complaint alone, the Court has no difficulty concluding that FMD pleads "all elements of [each] cause of action" for which it seeks relief.  *Wooten*, 788 F.3d at 499.

### A.    Copyright Claims

Count 1 of the Complaint alleges infringement of FMD's copyrighted website, while Count 2 of the Complaint alleges infringement of the code FMD wrote to publish that website.  Dkt. No. 1 at 5–7.  Because the elements of both claims are the same, the Court considers them together.

To prevail on a copyright infringement claim, a plaintiff must establish its ownership of a valid copyright and that the defendant violated one of plaintiff's exclusive rights to that copyright. 17 U.S.C. §§ 106, 501; *Cooper v. Harvey*, 108 F. Supp. 3d 463, 473 (N.D. Tex. 2015); *see Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").

### i.    FMD owned copyrights in its website and the code used to publish it.

The complaint alleges that FMD registered copyrights in both the fundmydeductible.com website's content and the code used to create the website.  ¶¶ 12–13. FMD provides the copyright registration numbers for both, *id.*, satisfying both the statutory prerequisites to a civil suit and its burden to plead ownership of the copyrighted works. 17 U.S.C. § 411(a); *see* 6 Patry on Copyright § 19:4 (2021) (collecting cases and noting that providing registration numbers is sufficient to prove ownership at the pleading stage "since basic information about the work is available by registration number on the Copyright Office's Web site, and defendants may, if they wish, easily obtain a copy of the actual certificate from the Copyright Office by providing the registration number").

ii.    **The defendants violated FMD's exclusive rights in their copyrights.**

Unlawful reproduction of a work occurs when there is factual copying that is legally actionable. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995). Factual copying requires that the alleged infringer used the copyrighted material to create his own work, and can typically be inferred when the alleged infringer had access to the copyrighted work and there is "probative similarity" between the two works. *Id.* at 1340. Access to the copyrighted material can be inferred if "the two works are so *strikingly* similar as to preclude the possibility of independent creation." *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001). Additionally, probative similarity includes "any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works.'" *Batiste v. Najm*, 28 F. Supp. 3d 595, 599–600 (E.D. La. 2014) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 370 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).

Here, the complaint alleges that the defendants copied, directly and in its entirety, the code and the depiction of FMD's digital platform. FMD alleges that the Bradleys created fraudulent accounts with FMD to access both sides of the FMD website—the contractor side and the homeowner side. ¶ 18. FMD alleges that, while using FMD's system, the defendants copied the code and content on the website. ¶19. That allegation meets the Rule 8(a) standard to provide sufficient notice to the defendants as to which portions of the work are alleged to have been copied. The complaint further alleges that the defendants used that misappropriated information to establish an "identical and competing"

website—financemydeductible.com. ¶ 20.  That allegation thus identifies how the defendants are alleged to have infringed on FMD's copyrights.  That allegation also satisfies the second part of the factual copying analysis:  coupled with the allegation of access (¶ 18), the allegation of probative similarity permits an inference of factual copying.  *See Peel & Co.*, 238 F.3d at 394.  And although it is not necessary that they do so, FMD pleads that the defendants copying was unauthorized.  ¶ 22; *see Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760–61 (7th Cir. 2016) (explaining in detail that, because authorization is an affirmative defense, pleading lack of authorization is unnecessary).  The complaint therefore states an adequate claim for relief for both copyright-infringement counts.

B.      **Trademark Claim**

Count 3 of the complaint seeks to recover for the defendants' copying of the trade dress and style of the Fund My Deductible website.  FMD alleges that the infringing site— Finance My Deductible—was designed to mimic its own, piggybacking off of the goodwill FMD had generated.

A party seeking to assert trademark-related claims under the Lanham Act and state law must generally show the mark was "used in commerce."  15 U.S.C. §§ 1114(1), 1125. "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade[.]"  15 U.S.C. § 1127.  A mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."  *Id.*  "[A] domain name does not become a trademark or service mark unless it is also used to identify and distinguish the source of goods or services."  5 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25A:18 (5th ed.) (emphasis added); *see also Mashantucket Pequot Tribe v. Redican*, 403 F. Supp. 2d 184, 191 (D. Conn. 2005) ("A court

– 44 –

ordinarily finds 'use' when a defendant 'place[s] the plaintiff's trademark on any goods or services in order to pass them off as emanating from or authorized by [the plaintiff].'") (alterations in original) (quoting *1-800 Contacts, Inc. v. WhenU.com., Inc.*, 414 F.3d 400, 408 (2d Cir. 2005)).

A party seeking to assert trademark-related claims under federal and state law generally must show that the infringing conduct was unauthorized. *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 (5th Cir. 2003) ("The purpose of [federal trademark dilution claims] is to protect trademarks from *unauthorized* users who attempt to trade upon the goodwill and established renown of such marks.") (emphasis added) (citations and internal quotation marks omitted); *Bos. Pizza Rests., L.P. v. Bay Three Ltd., Inc.*, 2013 WL 12123895, at *3 (N.D. Tex. July 8, 2013) (O'Connor, J.) ("[L]iability [for claims under §§ 1114(1) and 1125(a)] is predicated on the *unauthorized use* of the trademark or confusingly similar marks.") (emphasis in original).

The complaint adequately states a claim for trademark infringement. The complaint details how FMD does business online under the "FUND MT DEDUCTIBLE™" name through an eponymous web address. ¶ 10; *cf. Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 171 (1995) ("The Lanham Act significantly changed and liberalized the common law to dispense with mere technical prohibitions, most notably, by permitting trademark registration of descriptive words (say, 'U–Build–It' model airplanes) where they had acquired 'secondary meaning.'") (citation and internal quotation marks omitted). That business has, according to FMD, an excellent reputation and extensive goodwill. ¶¶ 15–17. Through its illegal copying of the computer code and style of FMD's website, the defendants have created and launched a competitor website using a similar mark—

– 45 –

FINANCE MY DEDUCTIBLE—without FMD's authorization.  ¶¶ 20–22.  Given these allegations and because the question of whether there is a likelihood of confusion between two marks is a question of fact—*see*, *generally*, *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921) (Hand, J.) *and E.I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F. Supp. 502 (E.D.N.Y. 1975)—the complaint adequately states a claim for trademark infringement.

### C.    Common-Law Claims

Count 4 pleads an unfair competition claim; Count 5 a common-law fraud claim; and Count 6 a common-law conspiracy claim.  All three are derivative of the copyright and trademark claims previously discussed, and all three are sufficiently well-pled to warrant an entry of default judgment.

### i.    Count 4:  Unfair Competition under Texas Common Law

"A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2011, pet. denied); *Viacom Int'l v. IJR Capital Investments, LLC*, 891 F.3d 178, 184 (5th Cir. 2018) ("A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim.").

Since the complaint adequately pleads a claim for trademark infringement, the claim for unfair competition under Texas common law is equally well-pled.

### ii.    Count 5:  Common-Law Fraud

"In Texas, a plaintiff must prove the following elements to establish fraud:  (1) the defendant made a material representation that was false; (2) the defendant knew the

representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.  The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable."  *CBE Gp., Inc. v. Lexington Law Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (internal citations and quotation marks omitted)).

"A party's intent is determined at the time the party made the representation; however, a party's intent may be inferred by the party's subsequent acts following the representation."  *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986)).  "Even 'slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.'"  *Id.* at 394–95 (quoting *Spoljaric*, 708 S.W.2d at 435).

Fraud claims must satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b):  "In allegations alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  "What constitutes 'particularity' will necessarily differ with the facts of each case."  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (*citing Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003).  The Fifth Circuit interprets Rule 9(b) to require, at minimum "specificity as to the statements (or omissions)

considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005); *see also Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997) (Rule 9(b) requires "'the who, what, when, where, and how' to be laid out.") (citations omitted).

FMD alleges that, in approximately July 2020, the defendants "entered into at least one fraudulent contractor agreement[] and at least one fraudulent customer agreement," thereby falsely representing "that they intended to subscribe to FMD's website services." ¶ 50; *see* ¶ 11 (explaining that the website requires that both contractors and customers enter into an agreement with FMD and accept a set of terms and conditions in order to access the website); ¶18 (detailing how the defendants gained access to the website through accounts generated based on false information). According to FMD, the defendants created those accounts not to avail themselves of FMD's services, but to access FMD's proprietary information—information the defendants later used to establish a competing website. ¶ 52. FMD says that it only allowed the defendants to access FMD's website because it believed the defendants were seeking FMD's services in good faith, ¶ 51, and that if it had known the defendants' true intentions, it would have barred them from accessing the site, ¶ 53.

On the basis of those allegations, FMD's complaint meets the requisite standard to plead a claim for fraud. It alleges specific misrepresentations by the defendants that FMD relied upon in granting them access to FMD's website—that they were a contractor and a homeowner seeking to utilize FMD's services. ¶ 18. It further alleges that those misrepresentations were intentional and knowing, ¶ 52, and, based on their later conduct in setting up the pirated website, the Court has no trouble concluding that the defendants did intend to deceive FMD when they sought access to FMD's site through the fraudulent

accounts.  And the complaint alleges that, but for their misrepresentations, FMD would not have granted the defendants access to the website.  ¶ 53.  That access allowed the defendants to copy FMD's code and likeness, making their misrepresentations obviously material. Count 5 is thus well-pled under Texas law.

### iii.    Count 6:  Common-Law Conspiracy

Under Texas common law, a litigant must prove the following elements to establish a claim for civil conspiracy: (1) two or more persons, (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.  *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012) (quoting *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex. 1998)). Establishing the prerequisite "overt act" requires a plaintiff to show that the defendant committed an act that, if done alone, would give rise to a cause of action.  *Markman v. Lachman,* 602 S.W.2d 350, 352 (Tex. App.—Texarkana 1980, no pet.).  Circumstantial evidence is enough to prove a civil conspiracy, but that evidence must amount to more than a mere suspicion, and vital facts cannot be proven by piling inference upon inference.  *Alford v. Thornburg,* 113 S.W.3d 575, 588 (Tex. App.—Texarkana 2003, no pet.); *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex. 1993.)

Because conspiracy to defraud is a derivative tort that includes an underlying claim of common-law fraud, the pleading standards of *Twombly* and Rule 9(b) apply to pleading a state-law claim of conspiracy to commit fraud.  *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 185, 193 (5th Cir. 2009).  So if a plaintiff fails to adequately plead fraud, the Court must dismiss the conspiracy claim, too.  *Jag Media Holdings, Inc. v. A.G. Edwards & Sons, Inc.,* 387 F.Supp.2d 691, 710 (S.D.Tex. 2004); *accord Allstate Ins. Co. v. Receivable Finance, Inc.,* 501

F.3d 398, 414 (5th Cir. 2007) ("Because [defendant] cannot be held liable for fraud, the remaining [defendants] cannot be held liable for conspiracy to commit fraud."); *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 438 (Tex. 1997) ("Allegations of conspiracy are not actionable absent an underlying [tort]"); *Krames v. Bohannon Holman, LLC,* No. 3:06-CV-2370-O, 2009 WL 762205, at *10 (N.D. Tex. Mar. 24, 2009) (O'Connor, J.) ("Plaintiffs' failure to state a claim for fraud, which is the offense underlying their conspiracy claim, necessitates that Plaintiffs' conspiracy claim should similarly be dismissed.").

As explained above, the complaint adequately pleads a claim for fraud.  It does so by explaining that two fraudulent accounts were created.  ¶ 18.  Given that the website requires identifying information and a credit card to create an account, *see* ¶ 11, the complaint pleads a plausible claim that Mark and Steven Bradley agreed to each create one account on each side of the platform—contractor and customer—so that they could gain access to FMD's entire site.  And, based on their later, admitted conduct, the Bradleys combined the information gleaned from both sides of the site to set up their pirated site.  Given that it alleges overt, unlawful acts, a meeting of the minds towards a shared goal, and resulting damages, the complaint adequately pleads a claim for common-law civil conspiracy.

*            *            *

Because FMD's complaint would withstand a motion under Rule 12(b)(6), FMD is entitled to a default judgment on all counts.

## 5.    The Default Judgment's Contents

The Court relies on the well-pleaded and admitted copyright claims to support its judgment.  FMD seeks a permanent injunction and attorney's fees, both of which the

Copyright Act authorizes for prevailing parties like FMD.  The Court concludes both are appropriate in this case.

### A.    Permanent Injunction

Under the Copyright Act, "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Likewise, Section 503 provides that the court may impound and destroy any articles used to make infringing copies of a copyrighted material.  17 U.S.C. § 503.  Permanent injunctive relief is "never lightly given."  *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997) (Sanders, J.).  But when copyright infringement occurs, an owner is entitled to an injunction prohibiting further infringing uses so long as the owner satisfies the prerequisites to injunctive relief.  *Broadcast Music, Inc. v. Tex Border Management, Inc.*, 11 F. Supp. 3d 689, 696 (N.D. Tex. 2014) (Ramirez, M.J.) (citing *Jobete Music Co., Inc. v. Hampton,* 864 F. Supp. 7, 9 (S.D. Miss. 1994)).

To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest."  *Arista Records, Inc. v. Kabani,* No. 3:03-CV-1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) (Sanders, J.) (citing *DSC Comm'ns Corp. v. DGI Tech., Inc.,* 81 F.3d 597, 600 (5th Cir. 1996)).  In short, an injunction is appropriate if liability has been established *and* if there is a continuing threat of further infringement of an owner's copyrights.  *See Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.,* 712 F. Supp. 1257, 1262 (S.D. Tex. 1989); *see also Granville v. Suckafree*

*Records, Inc.,* No. Civ.A. H-03-3002, 2006 WL 2520909 at *6–7 (S.D. Tex. June 28, 2006);

*Cent. Point Software, Inc. v. Nugent,* 903 F. Supp. 1057, 1060 (E.D. Tex. 1995) ("Courts have

traditionally granted permanent injunctions where a continuing threat of copyright

infringement exists and liability has been established.").  "The purpose of an injunction is to

prevent future violations[.]"  *Morrow v. Washington,* 277 F.R.D. 172, 200 (E.D. Tex. 2011).

FMD has prevailed on the merits, establishing the first element.  *See United States v.*

*Shipco General,* 814 F.2d 1011, 1014 (5th Cir. 1987) (holding that a default judgment is a

judgment on the merits conclusively establishing a defendant's liability).  The defendants

suffer no harm from a permanent injunction—they are merely stopped from doing

something they cannot lawfully do—so the third element is satisfied, as well.  And given the

egregious nature of the defendants' infringement and the need for free *and* fair competition,

a permanent injunction is abundantly in the public interest.

That leaves the second prong—whether there is an adequate remedy at law.

Although the defendants have conceded the merits, a default judgment does not amount to

a concession as to the damages alleged in the complaint.  Fed. R. Civ. P. 8(b)(6).

Nevertheless, the Court finds that there is no adequate remedy at law in this case.  Steven

asserts that the defendants are "broke" (Dkt. No. 52 at 1), suggesting that monetary

damages will neither deter the defendants nor compensate the plaintiffs.  Moreover, the

nature of the defendants' infringement—stealing computer code and using it to create a

competitor website—suggests that, absent an injunction, they will remain free to recreate

their infringing website elsewhere.  And without an enforceable injunction from this Court,

FMD would be forced to withstand yet another series of delays in an effort to defend its

copyrights.  The Court thus concludes that there is no adequate remedy at law.  Since all

four factors weigh in favor of granting a permanent injunction, the default judgment will include one.

**B.    Attorney's Fees**

The judgment will also include an award of attorney's fees.  The Copyright Act permits the Court to award "a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  But while "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), "'an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely.'"  *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015) (quoting *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)).  Courts may award attorney's fees based on "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (5th Cir. 1986).  The Court retains discretion to award attorney's fees even if the losing party's position is reasonable.  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1983 (2016).  Indeed, "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses."  *Id.* at 1988–89 (citing *Viva Video, Inc. v. Cabrera*, 9 F. App'x. 77, 80 (2d Cir. 2001)).

**i.    Whether Fees Should Be Awarded**

It is difficult to imagine a situation in which the need to advance the considerations of compensation and deterrence would be higher.  The defendants here have continued to infringe upon FMD's statutory rights while precluding any meaningful resolution of the

merits of this case.  The crux of a right is that is enforceable, but the defendants have

precluded any protection of FMD's rights.  Far from raising a meritorious defense, the

defendants have not raised any defense—because of them, this litigation did nothing to help

ensure that "the boundaries of copyright law [are] demarcated as clearly as possible."

*Fogerty*, 510 U.S. at 527.  An award of fees is therefore in the interests of justice.

Alternatively, given that the defendants have defaulted and thus admit to every

allegation of the complaint, the Court would deem the defendants' position to be objectively

unreasonable.  *See Kirtsaeng*, 136 S. Ct. at 1983.  The admitted facts establish that the

defendants colluded with one another to create fraudulent accounts with FMD.  They then

used those accounts to copy the code and likeness of FMD's namesake service, and used

that pirated information to establish a competitor.  Until recently, such conduct may well

have been a federal crime.  *See Van Buren v. United States*, 141 S. Ct. 1648 (2021).  It is hard

to imagine a more egregious violation of another's copyrights.  The objective

unreasonableness of the defendants' conduct is yet another reason that fees should be

awarded.

### ii.    What Fees Should Be Awarded

Having concluded that an award of fees is in order, the Court now turns to the

amount of such an award.  The Court has considered FMD's motion and the attached

exhibits (Dkt. No. 35-1) and finds, on the basis of the Court's experience and the prevailing

market rates in the Northern District for work such as that performed by FMD's counsel,

that the fees sought are fair, reasonable, and necessary.  *Johnson v. Georgia Highway Express,

Inc.*, 488 F.2d 714 (5th Cir. 1974); *see Primrose Operating Co. v. Nat'l. Am. Ins. Co.*, 382 F.3d

546, 562 (5th Cir. 2004) ("[T]rial courts . . . are themselves experts as to the reasonableness

of attorney's fees."); *see also Richmond v. SW Closeouts, Inc.*, No. 3:14-CV-4298-K, 2016 WL 4368305, at *4 (N.D. Tex. Aug. 16, 2016) (Horan, J.) (finding, in 2016, that an intellectual property attorney's billing rate of $385.00 per hour was not "significantly below that of similarly experienced litigators"); *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:12-CV-3583-B, 2016 WL 193586, at *9-10 (N.D. Tex. Jan. 14, 2016) (Boyle, J.) (noting that, five years ago, courts in the Northern District found that a reasonable hourly rate for copyright litigation ranges from $150.00 to $400.00 per hour) (citing cases).

The Court also concludes that the work performed for the copyright claims was inextricable from that performed for the trademark and state-law claims. As FMD's counsel acknowledged at the hearing on its motion, the addition of the trademark and state-law claims added only marginally to the costs FMD incurred because those claims descended directly and derivatively from the copyright claims, and the facts necessary to plead all claims were essentially the same. Accordingly, the Court finds segregating fees on a claim-by-claim basis unnecessary. In light of the skill and experience of the attorneys involved, the prevailing market rates, the complexity of the case, and the potential for duplicative billing, the Court concludes that the $43,395.75 in attorney's fees that FMD seeks to recover are fair, reasonable, and necessary.

## 6.    Conclusion

Steven and Mark repeatedly invoked their status as pro se litigants as a reason for this Court to grant them leeway. Ironically, it is that same pro se status that means the defendants are unlikely to appreciate precisely how generous the Court has been: Had the defendants been attorneys, they would have been sanctioned and referred to the bar for disciplinary proceedings long ago. The Court cannot—or at least will not—discipline pro se

parties in the same way.  But it can give the defendants their just desserts.  For their continual failure to defend against this suit, for their blatant disregard of the Federal Rules of Civil Procedure, and for their repeated flouting of this Court's orders, the defendants will have a default judgment entered against them.

FMD's Amended Motion for Default Judgment (Dkt. No. 35) is granted; the answers filed by Steven and Mark (Dkt. Nos. 44 & 46) are stricken as impermissible general denials for the reasons set forth above and those provided in the Court's prior order (Dkt. No. 18); and Steven and Mark's motions to set aside the Clerk's entry of default (Dkt. Nos. 45 & 47) are denied.  All other pending motions (Dkt. No. 52) are denied as moot.  A separate judgment will follow.

So ordered on December 10, 2021.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE